## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: | |
| | Case No. 17-17924-JGR |
| AJUBEO LLC, | |
| EIN: 45-2467444, | Chapter 11 |
| | |
| Debtor. | |

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) AUTHORIZING THE EMPLOYMENT OF BGA MANAGEMENT, LLC, d/b/a ALLIANCE MANAGEMENT, AS CHIEF RESTRUCTURING OFFICER

Ajubeo LLC (the "**Debtor**"), the debtor and debtor in possession in the above-captioned case, hereby moves (the "**Motion**") for entry of an order pursuant to sections 105(a) and 363(b) of Title 11 of the United States Code (the "**Bankruptcy Code**") authorizing the Debtor to employ and compensate BGA Management, LLC d/b/a Alliance Management ("**Alliance**"), as its Chief Restructuring Officer ("**CRO**").  In support of this Motion, the Debtor states as follows:

## I.     JURISDICTION AND VENUE

1.      This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 363(b) and 105(a) of the Bankruptcy Code.

## II.     BACKGROUND

3.      On August 25, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues to be in possession of its property and in management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      The Debtor was founded in 2011 and is headquartered in Boulder, Colorado.  The Debtor is a provider of cloud infrastructure services, providing data storage, backup, disaster recovery, and virtual desktop capabilities.  It leases server equipment from four equipment lessors.[1]  The Debtor's customers are companies that rely on the Debtor for secure data storage with leading update and cloud speed at a lower cost of ownership.

5.      In August 2016, the Debtor engaged the investment bank RCG, LLC (now Drake Star Partners, LLC, or "**Drake Star**") to market the business for sale.  At the time, the business was adding customers and improving its financial performance. Based on the performance of the business and favorable M&A environment for infrastructure service businesses, the Board of

---

[1] The Debtor believes that certain of the equipment "leases" are disguised financings.  The Debtor reserves all rights as to the characterization of its equipment "leases."

15922264

Managers determined that it was in the best interests of creditors and equity holders to pursue a sale.

6.     Drake Star contacted and sent teasers to over 100 parties that Drake Star and the Debtor determined were potential candidates for a transaction.  Of those parties, 27 executed non-disclosure agreements (the "**Interested Parties**").  The Interested Parties were given the opportunity to gain access to confidential information related to the Debtor, and asked to submit non-binding indications of interest ("**IOIs**").  The Debtor received IOIs from seven Interested Parties, and six of the Interested Parties were invited to participate in management meetings, either in person or telephonically, with Drake Star and the Debtor's management team. Remaining interested Parties were then asked to submit letters of intent ("**LOI**") to purchase the Debtor or all of the assets of the Debtor.  Three written or verbal LOIs were received during the process.  On January 31, 2017, the Debtor signed an LOI with a potential buyer ("**LOI Buyer**") for the sale of substantially all of the Debtor's assets.

7.     Prior to and after signing the January LOI with LOI Buyer, the Debtor suffered the loss or non-renewal of key customers, shortened renewal timeframes from a key customer, and diminished prospects for new customer additions.  This deterioration in business performance dampened LOI Buyer's interest in a transaction, and both parties terminated their LOI in March 2017.

8.     Between March and June 2017, the Debtor implemented cost-saving initiatives, reducing the employee base from 13 employees and consultants to 7 employees and consultants, in an effort to preserve liquidity, focus on serving its existing customer base, and secure customer renewals.

9.     In July 2017, the Debtor reestablished dialogue with LOI Buyer regarding a sale of the Debtor's assets, and signed a second LOI with LOI Buyer on August 10, 2017.

10.    While the Debtor was in the process of negotiating a definitive asset sale agreement with LOI Buyer, one of the equipment lessors filed a lawsuit seeking, *inter alia*, to seize the server equipment leased to the Debtor.  An "order to show cause" hearing was scheduled for August 25, 2017 at 10:00 a.m. MT.  The server equipment houses the Debtor's customers' data and is critical to the Debtor's operations.  In order to prevent the lessors from seizing the critical equipment and to preserve the going concern value of the business, the Debtor filed for chapter 11 protection on August 25, 2017.

11.    The Debtor is negotiating a proposed asset purchase agreement with LOI Buyer, pursuant to which LOI Buyer will serve as stalking horse bidder.  The Debtor anticipates that it will shortly file a motion to establish bidding procedures for the sale of substantially all of its assets.  The Debtor also anticipates filing a motion for use of cash collateral and/or debtor-in-possession financing within the next week.

### III.     SCOPE OF ENGAGEMENT AND PROPOSED COMPENSATION TERMS

12.     In connection with the Debtor's cost-saving initiatives described above, all of the Debtor's officers have resigned or otherwise left the company.[2]  Accordingly, it is necessary for the Debtor to obtain experienced guidance to ensure a smooth and orderly sale process and operations during this bankruptcy case.  The Debtor requires the services of Alliance to, *inter alia*, (i) administer and execute the anticipated sale process, (ii) manage the Debtor's ordinary course operations pending completion of the sale, and (iii) assist in the preparation and execution of filings necessary to satisfy the Debtor's responsibilities under the Bankruptcy Code, such as its schedules and statement of financial affairs.

13.     On August 25, 2017, the Debtor and Alliance entered into that certain *CRO Agreement* (the "**CRO Agreement**"), a copy of which is attached hereto as **Exhibit A**.  The Debtor's Board authorized the Debtor to execute the CRO Agreement.  The Debtor hereby seeks approval of the CRO Agreement and authorization to employ Alliance as CRO.

14.     Alliance is a financial advisory and management firm that specializes in, *inter alia*, turning around troubled businesses and marketing and selling such businesses and its assets.  Specifically, Alliance and its senior professionals have an excellent reputation for providing high-quality financial and restructuring advisory services to debtors and creditors in bankruptcy reorganizations and other debt restructurings.

15.     Alliance's decision to accept this engagement and serve as CRO to the Debtor is contingent upon its ability to be employed in accordance with the terms and conditions of the CRO Agreement.

16.     Alliance's services will include, *inter alia*, (i) managing and controlling all disbursements and all purchases of goods and services; (ii) retaining and supervising professionals to represent the Debtor in this case; (iii) administering and executing the sale process; (iv) representing the Debtor in discussions, negotiations, and agreements with creditors; and (v) managing the day-to-day operations of the Debtor's business.

17.     Given Alliance's vast experience in such matters, these services are necessary to the Debtor and its estate, particularly because the Debtor currently has no officers available to perform all such work.

18.     Under the CRO Agreement, the proposed terms of Alliance's compensation are summarized below:

    a.     <u>Hourly Rate and Retainer</u>.  Alliance's work will be performed and billed by Alliance, and paid for by the Debtor, at the rate of $375 per hour for Brock Kline, $385 per hour for Mark Thomas and David Burke, $395 per hour for Alex Smith and $495 per hour for Michael Knight.  These are the standard rates charged by Alliance for such individuals.  It is anticipated that Alex Smith will perform the majority of the work

---

[2] Although the Debtor does not have any officers, it uses the services of a full-time consultant with the title of Chief Technology Officer.  In addition, the Debtor's former Chief Executive Officer stepped down in April 2017 to pursue other career opportunities, but continues to provide limited consulting services for the Debtor.

15922264

on this matter, with assistance from other staff members as appropriate. The Debtor agrees to provide Alliance with retainer deposits in minimum increments of $20,000 for future services requested, with such deposits paid in advance of Alliance providing services. To ensure a smooth flow of work, Alliance shall remit a new invoice any time the retainer balance is less than $5,000. Alliance reserves the right to stop services if the Debtor fails to keep a retainer account with Alliance's firm. Fees left on deposit that remain unearned by Alliance will be promptly returned to the Debtor at the conclusion of the assignment, or upon written request. For the avoidance of doubt, Alliance will not receive any compensation from the Debtor unless and until the CRO Agreement is approved by the Court.

       b.   <u>Incentive Compensation</u>. As set forth in more detail in the CRO Agreement, Alliance will receive a "Success Fee" equal to: (i) 2% of the purchase price consideration paid (whether by one or more buyers) for the Assets (as defined in the CRO Agreement) sold up to $1,545,000, and (ii) 5% of the purchase price consideration paid in excess of $1,545,000.

19.    The Debtor believes that the proposed compensation to be paid to Alliance is reasonable, market-based, and designed to fairly compensate Alliance for its work and the results achieved.

20.    Because the Debtor does not seek to employ Alliance as a professional under section 327 of the Bankruptcy Code, the Debtor requests that Alliance not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Nevertheless, in order to maintain transparency, Alliance will, within 14 days after the last day of each month, file monthly statements of compensation paid and will serve such reports on the United States Trustee and all creditors and other parties in interest. The Debtor proposes that interested parties be allowed 14 days from the date of the filing to object to each such monthly report. If any objections are filed, the Debtor will seek a hearing. To the extent that the Court ultimately disallows any compensation paid to Alliance, Alliance shall be required to disgorge such payments. If no objections are filed, the compensation shall be deemed fully and finally approved by the Court. This compensation procedure is similar to procedures recently approved by this Court. *See In re Haimark Line, Ltd.*, Case No. 15-22180-JGR (Bankr. D. Colo. June 21, 2016).

21.    The CRO Agreement also contains standard indemnification language with respect to Alliance's services. The Debtor will indemnify Alliance from and against all claims, liabilities, losses, expenses, and actual damages arising out of the engagement that is the subject of the CRO Agreement, provided, however, that the indemnity and defense protections set forth in the CRO Agreement will not apply if a court of appropriate jurisdiction determines that the claims made against Alliance were the result of Alliance's gross negligence or willful misconduct. The CRO Agreement further provides that Alliance's liability to the Debtor for any claims that Debtor may have against Alliance shall be limited in their aggregate amount to the dollar value of the fees actually paid by the Debtor to Alliance. The indemnity and limitation of liability protections afforded to Alliance under Section 3.3 of the CRO Agreement are subject to review and approval of the Bankruptcy Court.

22.     Although the Debtor believes that the "disinterestedness" and "material adverse interest" requirements of section 327 of the Bankruptcy Code do not apply to officers employed pursuant to section 363(b) of the Bankruptcy Code, the attached Declaration of Alex Smith, *see* **Exhibit B**, states that except as disclosed therein, Alliance (i) has no connection with the Debtor, its creditors, or other parties in interest in this case; and (ii) does not hold any interest adverse to the Debtor's estate.  Alliance will supplement its disclosure to the Court in the event that any new material facts or relationships are discovered or arise.

## IV.     BASIS FOR RELIEF

23.     The Debtor seeks approval of Alliance as CRO pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.  Section 363(b)(1) provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Further, section 105(a) of the Bankruptcy Code states that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out of the provisions of this title."  11 U.S.C. § 105(a).

24.     Bankruptcy courts have analyzed a debtor's decision to employ corporate restructuring officers and similar officers and professionals under section 363(b) of the Bankruptcy Code on numerous occasions and have determined that it is an appropriate exercise of business judgment to employ a restructuring or liquidation professional.  *See, e.g.*, *In re Haimark Line, Ltd.*, Case No. 15-22180-JGR (Bankr. D. Colo. June 21, 2016); *In re Lyon Workspace Prods., LLC*, Case No. 13-02100 (Bankr. N.D. Ill. Feb. 19, 2013); *In re Veritis Holdings, Inc.*, Case No. 12-12821 (Bankr. D. Del. Nov. 20, 2012); *In re Sharper Image Corp.*, Case No. 08-10322 (Bankr. D. Del. Apr. 23, 2008); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Jan. 17, 2007); *In re ACR Mgmt., LLC*, Case No. 04-27848 (Bankr. W.D. Pa. June 16, 2004).

25.     Under well-settled case law from this and other jurisdictions, courts will approve a debtor's proposed use, sale, or lease of estate property if the proposed use represents a reasonable business judgment on the part of the debtor.  *See, e.g.*, *In re Psychometric Sys., Inc.*, 367 B.R. 670, 675 (Bankr. D. Colo. 2007) (debtor's business judgment in a section 363 sale to be given "great deference"); *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)).

26.     The Debtor submits that the employment of Alliance as CRO is a sound exercise of its business judgment and satisfies the requirements set forth in section 363(b) of the Bankruptcy Code.  Mr. Smith of Alliance is already in the process of acquiring critical knowledge about the Debtor's financial affairs and the status of the sale process.  The Debtor currently has no officers with such institutional knowledge, and consequently believes it is prudent to retain a qualified and knowledgeable CRO.  Based on this information and Alliance's extensive experience providing similar services to distressed companies, the Debtor submits that the appointment of Alliance as CRO will provide valuable services that benefit the Debtor, this estate, and all parties in interest.  Accordingly, the Debtor respectfully submits that the services proposed to be provided by Alliance are critical to maximizing the value of this estate and recoveries to creditors.

15922264

27.     The Debtor believes that the compensation terms and conditions proposed by the Debtor herein appropriately reflect the nature and scope of the services to be provided by Alliance, given the demands of this case and the expertise of Alliance.  The proposed Success Fee to be awarded to Alliance is also reasonable in light of the services Alliance is providing in guiding the marketing efforts of the Debtor.  *See, e.g., In re Fresh Produce Holdings, LLC*, Case No. 15-13485-MER (Bankr. D. Colo. Apr. 22, 2015) (approving transaction incentive fee to Alliance of 2.5% of purchase price); *In re Residential Capital, LLC*, 504 B.R. 358, 363-372 (Bankr. S.D.N.Y. 2014) (overruling U.S. Trustee's objection and approving a financial advisor's payment that included both monthly compensation of $250,000 and a transaction fee of $2 million).  Further, the Success Fee applies only if Alliance assists the Debtor in securing a sale of assets.  This requirement serves the best interests of creditors and the estate.

28.     The Debtor further submits that the Indemnification Provisions are reasonable and in keeping with the terms and conditions typical for engagements of this character.  Similar indemnification arrangements have been approved and implemented in other chapter 11 cases by courts.  *See, e.g., In re Fresh Produce Holdings, LLC*, Case No. 15-13485-MER (Bankr. D. Colo. Apr. 22, 2015); *In re Tropicana Ent'mt, LLC*, No. 08-10856 (KJC) (Bankr. D. Del.  May 30, 2008); *In re Leiner Health Prods., Inc.*, No. 08-10446 (KJC) (Bankr. D. Del.  April 4, 2008); *In re New Century TRS Holdings, Inc.*, No. 07-10416 (KJC) (Bankr. D. Del.  Apr. 26, 2007); *In re FLY, Inc.*, No. 05-20011 (MFW) (Bankr. D. Del.  Jan. 17, 2006); *In re Foamex Int'l, Inc.*, No. 05-12685 (NW) (Bankr. D. Del.  Oct. 17, 2005); *In re Oakwood Homes Corp.*, No. 02-13396 (PJW) (Bankr. D. Del.  July 21, 2003); *In re United Artists Theatre Co.*, No. 00-3514 (SLR) (Bankr. D. Del.  Dec. 1, 2000).

## V.     REQUEST FOR WAIVER OF RULE 6004(h) STAY

29.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  Here, waiver of the 14-day stay of effectiveness is warranted because the Debtor has a pressing need to employ Alliance to oversee the Debtor's day-to-day operations and manage the sale process.  Accordingly, the Debtor hereby requests a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h) so that the relief requested herein can take effect immediately upon entry of an order approving this Motion.

**WHEREFORE**, the Debtor requests that the Court enter an order (substantially in the form of the proposed order attached hereto) (i) authorizing the Debtor to employ and compensate Alliance as CRO, effective as of the Petition Date; (ii) approving the CRO Agreement; (iii) waiving the 14-day stay under Bankruptcy Rule 6004(h); and (iv) granting such other and further relief as the Court deems just and proper.

15922264

DATED:  August 29, 2017.

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

*s/ Samuel M. Kidder*
Michael J. Pankow, #21212
Joshua M. Hantman, #42010
Samuel M. Kidder, #49125
410 17th Street, Suite 2200
Denver, Colorado  80202
Telephone:  (303) 223-1100
Facsimile:  (303) 223-1111
mpankow@bhfs.com
jhantman@bhfs.com
skidder@bhfs.com

*Proposed Attorneys for the Debtor*

15922264

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of August, 2017, the foregoing DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) AUTHORIZING THE EMPLOYMENT OF BGA MANAGEMENT, LLC, d/b/a ALLIANCE MANAGEMENT, AS CHIEF RESTRUCTURING OFFICER was electronically filed with the Court using the CM/ECF system, which sent notification to all parties in interest participating the CM/ECF system, was served by placing same via first class mail postage prepaid properly addressed to (i) all parties identified on the attached mailing matrix and (ii) the following parties:

Drake Star Partners
950 Third Avenue
New York, NY 10022

_s/ Sheila M. Grisham_
Sheila M. Grisham

15922264

Label Matrix for local noticing
1082-1
Case 17-17924-JGR
District of Colorado
Denver
Tue Aug 29 12:29:17 MDT 2017

Advizex Technologies, LLC
4019 Solutions Center
Chicago, IL 60677-4000

Advoda Communications, Inc.
6455 S. Yosemite Street, Suite 400
Greenwood Village, CO 80111-5057

Ajubeo LLC
1470 Walnut Street, Suite 400
Boulder, CO 80302-5371

BMO Harris Bank National Association
1113 Spruce Street, Suite 100
Boulder, CO 80302-4001

Big Sky Solutions, Inc.
Attn: Jim Albee
7967 S. Clayton Cir.
Centennial, CO 80122-3481

BizTek International, LLC
1113 Spruce Street, Suite 100
Boulder, CO 80302-4001

Brocade
P.O. Box 644006
Cincinnati, OH 45264-4006

CSC Leasing Company
Attn: Jim Smith
6806 Paragon Place, Suite 170
Richmond, VA 23230-1829

CT Corporation
P.O. Box 4349
Carol Stream, IL 60197-4349

CenturyLink
PO Box 29040
Phoenix, AZ 85038-9040

Chubb & Son
PO Box 382001
Pittsburgh, PA 15250-8001

Chuck Price
1277 S. Mesa Court
Superior, CO 80027-8057

Cisco WebEx
16720 Collections Center Drive
Chicago, IL 60693-0167

Coalfire Controls
Attn: Zach Dillon
11000 Westmoor Circle, Suite 450
Westminster, CO 80021-2753

Cogent Communications
Attn: Robert Barse
P.O. Box 791087
Baltimore, MD 21279-1087

Colorado Department Of Revenue
1375 Sherman St.
Room 504
Attention Bankruptcy Unit
Denver CO 80261-3000

Commvault Systems, Inc.
Attn: Aaron A. Bunte
28496 Network Place
Chicago, IL 60673-1284

Data Sales Co., Inc.
Attn: Peter Friedenfeld
3450 West Burnsville Parkway
Burnsville, MN 55337-4203

Dave Culbertson
12695 Winona Cir.
Broomfield, CO 80020-5736

DiscoverOrg LLC
Attn: Mark Flynn
Unit 94
PO Box 4500
Portland, OR 97208-4500

FORTRUST
Attn: Tiffany Freeman
4300 Brighton Blvd.
Denver, CO 80216-3710

Farnam Street Financial, Inc.
240 Pondview Plaza
5850 Opus Parkway
Minnetonka, MN 55343-9687

Farnam Street Financial, Inc.
Attn: Ryan Hartung
5850 Opus Parkway
Minnetonka, MN 55343-9687

Global Communications Group
10333 E. Dry Creek Road, Suite 430
Englewood, CO 80112-1561

Alison Goldenberg
Byron G. Rogers Federal Building
1961 Stout St.
Ste. 12-200
Denver, CO 80294-6004

Joshua M. Hantman
410 17th St.
Ste. 2200
Denver, CO 80202-4432

Hewlett-Packard Financial Services Company
Attn: Jason Smith
PO Box 402582
Atlanta, GA 30384-2582

IRS
PO Box 7346
Philadelphia PA 19101-7346

Integrity Wealth Management
13540 Meadowgrass Dr., Suite 100
Colorado Springs, CO 80921-3006

Interxion
Attn: Julia Pra
Hanauer Landstrasse 298
Frankfurt
AM MAIN 60314
Germany

Kendall, Koenig & Oelsner PC
999 Eighteenth Street, Suite 1825, North
Denver, CO 80202-2418

Kendall, Koenig & Oelsner PC
Attn: Jon Taylor
2060 Broadway, Ste 200
Boulder, CO 80302-5232

Samuel M. Kidder
410 17th St., Ste. 2200
Denver, CO 80202-4432

Kris Stover
1700 Cambridge Dr.
Norman, OK 73069-7427

Leaf Capital Funding, LLC
2005 Market Street, 14th Floor
Philadelphia, PA 19103-7009

Leaf Capital Funding, LLC
Attn: Matthew J. Weiss
190 Moore Street, Ste. 203
Hackensack, NJ 07601-7418

Level 3 Communications
Attn: Robert Camenisch
PO Box 910182
Denver, CO 80291-0182

LogicMonitor, Inc.
Dept. LA 24200
Pasadena, CA 91185-0001

Neugeboren ODowd PC
Attn: Carolyn Juarez
1227 Spruce St., Suite 200
Boulder, CO 80302-4829

Nothing But Net
PO Box 60963
Phoenix, AZ 85082-0963

Objective Aim Consulting, LLC
Attn: Dave Culbertson
12695 Winona Cir.
Broomfield, CO 80020-5736

Optum Bank, Inc.
2525 Lake Park Blvd.
Salt Lake City, UT 84120-8230

PSI Network, Inc.
24800 Christina Way, Suite 250
Mission Viejo, CA 92691-4836

Promark Technology, Inc.
Attn: Mark Matthew
PO Box 403624
Atlanta, GA 30384-3624

Quest
PO Box 910
Roseville, CA 95678-0910

Securities and Exchange Commission
Central Regional Office
1961 Stout St.
Ste. 1700
Denver CO 80294-1700

Shrink IT Systems Inc.
PO Box 16608
Surfside Beach, SC 29587-6608

Silicon Valley Bank
3003 Tasman Drive
Santa Clara, CA 95054-1191

Steve Brothers
71 S. Juniper Court
Golden, CO 80401-5002

Syntuity
6334 S. Racine Circle, Suite 200
Centennial, CO 80111-6405

US Trustee
Byron G. Rogers Federal Building
1961 Stout St.
Ste. 12-200
Denver, CO 80294-6004

VAR Resources, Inc.
7808 Creekridge Circle, Suite 250
Edina, MN 55439-2647

Valcom Sale Lake City, LC
3520 S. 300 W.
Salt Lake City, UT 84115-4310

Virginia Commonwealth Bank
1965 Wakefield Street
PO Box 1777
Petersburg, VA 23805-0777

Zayo
PO Box 952136
Dallas, TX 75395-2136

Zerto
Attn: Nick Nguyen
27-43 Wormwood Street, Suite 530
Boston, MA 02210
1 02210-1619

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
                              End of Label Matrix
                   Mailable recipients    56
                   Bypassed recipients     1
                   Total                  57
```