**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | Case No. 17-17924-JGR |
| AJUBEO LLC,<br>EIN: 45-2467444, | Chapter 11 |
| Debtor. | |

**ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) APPROVING PROCEDURES FOR THE ASSUMPTION, ASSIGNMENT, AND SALE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) APPROVING THE FORM AND MANNER OF NOTICE OF THE AUCTION AND SALE HEARING AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (E) SCHEDULING AN AUCTION AND SALE HEARING, AND (F) GRANTING RELATED RELIEF**

This matter having come before this Court on the motion of Ajubeo LLC (the "**Debtor**")[1] for Orders Pursuant to §§ 105(a), 363(b), and 365 of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "**Bankruptcy Code**"); Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court of the District of Colorado (the "**Local Rules**") (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Approving Stalking Horse Bid Protections, (C) Approving Procedures for the Assumption, Assignment, and Sale of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Notice of the Auction and Sale Hearing and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases,

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or related Asset Purchase Agreement (the "**APA**") or the Bidding Procedures, as appropriate.

15931239

(E) Scheduling an Auction and Sale Hearing, and (F) Granting Related Relief; and

(II)(A) Authorizing and Approving the Sale of Substantially All Assets and the Assumption and

Assignment of Certain Executory Contracts and Unexpired Leases, and (B) Waiving the 14-Day

Stay of Fed. R. Bankr. P. 6004(h) and 6006(d) (the "**Sale Motion**"); and the Debtor, by the Sale

Motion, having requested the entry of an order (this "**Bidding Procedures Order**")

(a) approving bidding procedures in connection with the Sale (the "**Bidding Procedures**");

(b) approving the form and manner of (i) the notice that will be filed with this Court and served

on all creditors and other parties in interest regarding the Auction, the Sale and the Sale Hearing

as set out herein (the "**Notice of Sale**") and (ii) the notice (the "**Assignment Notice**"), which

shall be filed and served on all non-debtor counterparties to any executory contract or unexpired

lease (the "**Contracts**") of the Debtor, of the potential assumption and assignment (the

"**Assumption and Assignment**") of such Contracts to the Successful Bidder in connection with

the Sale, and the cure amounts in respect thereof; and (c) scheduling a hearing at which this

Court will consider approval of the Sale pursuant to and as described in the APA (or any other

Successful Bid in accordance with the Bidding Procedures) (the "**Sale Hearing**"); and the

Debtor having determined that the Bidding Procedures, and the other relief related thereto

requested in the Sale Motion will induce competitive bidding for the Debtor's assets and will

maximize the value of the Debtor's estate; and this Court having reviewed and considered (i) the

Sale Motion and the exhibits thereto; (ii) arguments of counsel in support of the entry of this

Bidding Procedures Order; and (iii) the opposition thereto, if any, at a hearing for such purpose

(the "**Bidding Procedures Hearing**"); and it appearing that the relief requested in the Sale

Motion is necessary and in the best interests of the Debtor, its estate, its creditors, and other

2

15931239

parties-in-interest therein; and it appearing that due and proper notice of the Sale Motion has

been given as set forth in the Sale Motion and that no other or further notice need be given; and

reasonable opportunity to object or be heard regarding the relief granted herein having been

afforded to all interested persons and entities, including but not limited to the Notice Parties (as

defined below); and upon the record of the Bidding Procedures Hearing; and after due

deliberation thereon; and good cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.     This Court has jurisdiction over this matter and over the property of the Debtor

and its bankruptcy estate pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding

pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (N), and (O). Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     As evidenced by the certificates of service previously filed with this Court, and

based on the representations of counsel at the Bidding Procedures Hearing, (i) proper, timely,

adequate, and sufficient notice of the Bidding Procedures, the form and manner of providing the

Notice of Sale, the Assignment Notice, the Bidding Procedures Hearing and the other relief

related thereto requested in the Sale Motion has been provided in accordance with sections

102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and

Local Rule 6004-1; (ii) such notice was good and sufficient and appropriate under the particular

circumstances; and (iii) no other or further notice of Bidding Procedures, the form and manner of

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

3

15931239

the Notice of Sale and the Assignment Notice, the Bidding Procedures Hearing and the other relief related thereto requested in the Sale Motion is necessary or shall be required.

C.       Reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested in the Sale Motion has been afforded to all interested persons and entities, including, without limitation: (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Debtor or the Purchased Assets; (ii) any entities known to have asserted any Encumbrance in or upon the Purchased Assets; (iii) each of the non-debtor counterparties to the Contracts (each a "**Counterparty**"); (iv) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (v) all parties to the APA (or any other Successful Bid in accordance with the Bidding Procedures) and all related agreements; (vi) the Office of the United States Trustee; (vii) the Internal Revenue Service; (viii) all entities that have requested notice in accordance with Bankruptcy Rule 2002; and (ix) all other known creditors of the Debtor.

D.       The Debtor has articulated good and sufficient reasons for approving (i) the Bidding Procedures; (ii) the form and manner of the Notice of Sale; (iii) the form and manner of providing the Assignment Notice; and, in connection therewith, (iv) the procedures described below for the determination of the amounts necessary to cure defaults under the Assumed Contracts (the "**Cure Costs**") and to address any other disputes in connection with the Assumption and Assignment pursuant to section 365 of the Bankruptcy Code; and (v) the other relief related thereto requested in the Sale Motion.

E.       The Debtor has articulated good and sufficient reasons for scheduling the Sale Hearing as set forth herein.

4

15931239

F.      The Debtor's notice of the Auction, the Sale, the Sale Hearing and the Assumption and Assignment as described herein is appropriate and reasonably calculated to provide interested parties with timely and proper notice, and no other or further notice is required.

G.      The Bid Protections (as defined in the Sale Motion) are reasonable, necessary, and appropriate because they were necessary to induce the Stalking Horse Bidder to serve as stalking horse, which sets a baseline for an orderly auction and sale process;

H.      The Minimum Overbid and Bidding Increments are beneficial to the Debtor's estate and creditors because they will ensure a competitive and efficient bidding process and will enhance the Debtor's ability to maximize the value of its assets for the benefit of its creditors and other parties-in-interest therein.  The terms and conditions of the Minimum Overbid and Bidding Increments are fair and reasonable and are the product of extensive good faith negotiations between the Debtor and the Stalking Horse Bidder.  The Debtor has demonstrated a sound business justification for the Minimum Overbid and Bidding Increments.

(i)     *Minimum Overbid*. The Minimum Overbid will benefit the Debtor's estate because it will function as an effective tool to identify only highly motivated bidders.  A Minimum Overbid on the terms described in the Bidding Procedures will ensure both that the competing bidders are serious and that their overbids are meaningfully better for the Debtor (considering the added cost of facilitating further diligence to new bidders under time and publicity constraints).  The Minimum Overbid will ensure that the Auction will generate a material benefit to the Debtor's estate as a whole.

15931239

(ii)     *Bidding Increments*. Similarly, the Bidding Increments, on the terms described in the Bidding Procedures, will effectively filter the pool of prospective bidders and ensure that competing bidders are seriously motivated to purchase the Purchased Assets.  Thus, the Bidding Increments also provide a benefit to the Debtor's estate.

I.     The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the proceeds from the Sale. The Bidding Procedures were negotiated in good faith and at arm's length between the Debtor and the Stalking Horse Bidder. Under the circumstances, and particularly in light of the extensive prior marketing of the Purchased Assets, the Bidding Procedures constitute a reasonable, sufficient, adequate, and proper means to provide potential competing bidders with an opportunity to submit and pursue higher and better offers for the Purchased Assets.

J.     Time is of the essence with respect to the entry of this Bidding Procedures Order.

K.     Entry of this Bidding Procedures Order is in the best interests of the Debtor and its estate, creditors and other parties-in-interest.

L.     The Sale Motion and this Bidding Procedures Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The procedures set forth in the Sale Motion are APPROVED to the extent set forth herein.

2.     Any objections to entry of this Bidding Procedures Order or the relief granted herein that have not been withdrawn or waived and all reservations of rights included in such objections, are overruled in all respects on the merits.

6

15931239

*Bidding Procedures*

3.      The Bidding Procedures set forth in Exhibit A hereto and the Assumption and
Assignment Procedures (as defined below) are hereby **APPROVED** and the Bidding Procedures
shall be fully incorporated into this Bidding Procedures Order.  The Bidding Procedures and the
Assumption and Assignment Procedures shall be used for (i) marketing, negotiating and
consummating the Sale of the Purchased Assets free and clear of all Encumbrances in
accordance with section 363 of the Bankruptcy Code, and (ii) the Assumption and Assignment in
accordance with section 365 of the Bankruptcy Code and shall govern all proceedings relating to
the Sale, the APA, and any subsequent bids for the Purchased Assets in this Bankruptcy Case.
The Debtor is hereby authorized and directed to act in accordance with the Bidding Procedures
and the Assumption and the Assignment Procedures.

4.      The failure specifically to include or reference any particular provision of the
Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the
effectiveness of such provision, it being the intent of this Court that the Bidding Procedures be
authorized and approved in their entirety.

5.      To constitute a "Qualified Bid," any offer by any person wishing to submit a
higher or better offer for the Purchased Assets (or a portion thereof) must be made in accordance
with the terms of the Bidding Procedures; *provided* that the APA is and is hereby deemed to be a
Qualified Bid.

6.      No party, other than the Stalking Horse Bidder, submitting any offer to purchase
the Purchased Assets (or a portion thereof) or having made a Qualified Bid of any nature:
(a) may request as part of any such offer any expense reimbursement, break-up fee, or

7

15931239

termination payment or any other similar fee or payment in connection with the Sale process contemplated by these Bidding Procedures; or (b) shall be entitled to any of the foregoing payments for having tendered any such offer to purchase, or for agreeing to purchase, the Purchased Assets (or a portion thereof).

7.      To participate at the Auction, an Overbidder must submit its bid in a form acceptable to the Debtor (with copies to certain professionals as explained in the Bidding Procedures) on or before October 23, 2017 at 5:00 p.m. (prevailing Mountain Time) (the "**Bid Deadline**"), as further described in the Bidding Procedures.

8.      The Auction, if any, shall be conducted at the offices of Brownstein Hyatt Farber Schreck LLP, 410 17th Street, Suite 2200, Denver, Colorado 80202, on October 27, 2017 at 9:00 a.m. (prevailing Mountain Time).

*Notice, Objection Deadline to Sale Order and Sale Hearing*

9.      Notice of the Bidding Procedures, the Auction, the Sale, the Sale Hearing, the Assumption and Assignment and the relief requested in the Sale Motion with respect thereto shall be good and sufficient notice, and no other or further notice shall be required if given as follows:

(a)      within two (2) business days after entry of this Bidding Procedures Order, the Notice of Sale substantially in the form attached to the Sale Motion as Exhibit 2, along with this Bidding Procedures Order and the Bidding Procedures, shall be served by first-class mail upon (i) all entities known to the Debtor to have expressed an interest in the Purchased Assets; (ii) all entities known to the Debtor to have asserted any Encumbrance in or upon the Purchased Assets (or a portion thereof); (iii) all federal, state and local regulatory or taxing authorities or

8

15931239

governmental authorities that have a reasonably known interest in the relief requested by the Sale Motion (including the Internal Revenue Service); (iv) the Office of the United States Trustee for the District of Colorado; (v) all known creditors and other parties-in-interest of the Debtor; and (vi) all entities requesting notice pursuant to Bankruptcy Rule 2002; and

(b)      within two (2) business days after entry of this Bidding Procedures Order, the Assignment Notice, substantially in the form attached to the Sale Motion as Exhibit 3, shall be served by first-class mail upon each counterparty to the potential Assumed Contracts.

13.      The Sale Hearing will take place on October 30, 2017 at [•] (prevailing Mountain Time) in the courtroom of the Honorable Joseph G. Rosania in the United States Bankruptcy Court for the District of Colorado, 721 19th St., Denver, Colorado 80202.

14.      The Sale Hearing to consider approval of the Sale to the Successful Bidder (or to approve the APA if the Successful Bid is by the Stalking Horse Bidder) may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open Court or on this Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

15.      Objections to the relief sought in the Sale Order shall be in writing, filed and served so as to be actually received by (i) the Debtor's Chief Restructuring Officer, Alliance Management, 1400 Sixteenth Street, Suite 400, Denver, CO 80202, Attn: Alex Smith; (ii) counsel for the Debtor, Brownstein Hyatt Farber Schreck LLP, 410 17th Street, Suite 2200, Denver CO 80202, Attn: Joshua M. Hantman; (iii) counsel for the Stalking Horse Bidder, Fairfield and Woods, P.C., 1801 California Street, Suite 2600, Denver, CO 80202, Attn: Matthew S. Rork; (iv) counsel for Silicon Valley Bank, Riemer Braunstein, LLP, Three Center

9

Plaza, Suite 600, Boston, MA 02108, Attn: Alexander Rheaume; and (v) the Office of the United

States Trustee, Byron G. Rogers Federal Building, 1961 Stout St., Ste. 12-200, Denver, CO

80294 (collectively, the "**Notice Parties**") by [•], 2017 at [•] (prevailing Mountain Time).

*Assumption and Assignment Procedures*

16.    The following procedures (the "**Assumption and Assignment Procedures**")

shall govern the Assumption and Assignment:

(a)    The Debtor shall, within two (2) business days after the date of this

Bidding Procedures Order, serve on each Counterparty an Assignment Notice specifying the

Cure Cost and the potential for the Debtor to assume and assign each of the Contracts to the

Stalking Horse Bidder or other Successful Bidder.  If the Debtor identifies additional executory

contracts or unexpired leases that might be assumed by the Debtor and assigned to the Stalking

Horse Bidder (or other Successful Bidder) not set forth in the original Assignment Notice, the

Debtor shall promptly send a supplemental notice (a "**Supplemental Assignment Notice**") to the

applicable counterparties, and such additional contracts or leases shall be deemed Contracts for

purposes of this Order.

(b)    Objections, if any, to the proposed Cure Costs, or to the proposed

Assumption and Assignment, including, but not limited to, objections relating to adequate

assurance of future performance by the Stalking Horse Bidder or objections relating to whether

applicable law excuses the Counterparty from accepting performance by, or rendering

performance to, the Successful Bidder for purposes of section 365(c)(l) of the Bankruptcy Code,

must be in writing and filed with this Court and served on the Notice Parties so as to be received

no later than five (5) business days prior to the Bid Deadline (the "**Designation and Cure**

10

15931239

**Objection Deadline**"); provided, however, that in the event the Successful Bidder is a bidder other than the Stalking Horse Bidder (which, if applicable, will be set forth in the Notice of Successful Bidder and Assumed Contracts), objections relating to adequate assurance of future performance may be raised at any time prior to or during the Sale Hearing; provided further, however, that for any counterparty that receives a Supplemental Assignment Notice, the Designation and Cure Objection Deadline shall be the earlier of (i) ten (10) days after the mailing of the Supplemental Assignment Notice, or (ii) two (2) business days prior to the Sale Hearing.

(c)      Within twenty-four (24) hours after the conclusion of the Auction, the Debtor shall file a notice (the "**Notice of Successful Bidder and Assumed Contracts**"), which shall state (i) the identity of the Successful Bidder, and (ii) the Contracts that the Debtor proposes to assume and assign to the Successful Bidder (the "**Assumed Contracts**").

(d)      Where a Counterparty files an objection meeting the requirements set forth herein, objecting to the assumption by the Debtor and assignment to the Successful Bidder of such Contract (the "**Disputed Designation**") and/or asserting a cure amount higher than the proposed Cure Costs listed on the Assignment Notice (the "**Disputed Cure Costs**"), the Debtor, the Stalking Horse Bidder, or the other Successful Bidder (as the case may be), and the Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention. If the Debtor, the Counterparty, and the Stalking Horse Bidder (or the other Successful Bidder, as the case may be), determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed Designation and/or the amount to be paid under section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by this Court at the Sale Hearing.  If this Court

11

determines at the Sale Hearing that the Assumed Contract will not be assumed and assigned, then such executory contract shall no longer be considered an Assumed Contract, provided, however, that after such determination is made by this Court, the Debtor may propose a new Cure Cost in accordance with the procedures set forth herein, including providing the applicable Counterparty with the Assignment Notice setting forth the redesignation and proposed new Cure Cost of the Assumed Contract.  Notwithstanding the foregoing, the Debtor, in consultation with the Stalking Horse Bidder, or the other Successful Bidder (as the case may be), may at any time withdraw its application to this Court for authorization to assume and assign any Assumed Contract that is the subject of a Disputed Designation.

(e)     Other than with respect to the ability to raise objections relating to adequate assurance of future performance of a Successful Bidder other than the Stalking Horse Bidder at any time prior to or during the Sale Hearing, any Counterparty to a Contract who fails to timely file an objection to the proposed Cure Costs or the proposed assumption and assignment of a Contract by the Designation and Cure Objection Deadline is deemed to have consented to such Cure Costs and the assumption and assignment of such Contract, and such party shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtor, its estate, or the Stalking Horse Bidder (or the other Successful Bidder, as the case may be).

(f)     If the Counterparty to a Contract fails to timely object to the assumption and assignment of a Contract or the proposed Cure Cost relating thereto by the Designation and Cure Objection Deadline, or upon the resolution of any timely objection by agreement of the parties or order of this Court approving an assumption and assignment, such Contract may be

12

assumed by the Debtor and assigned to the Successful Bidder, and the proposed Cure Cost related to such Contract shall be established and approved in all respects, subject to the conditions set forth directly below.

(g)      The Debtor's decision to assume and assign the Assumed Contracts is subject to Court approval and consummation of the Sale.  Accordingly, subject to the satisfaction of conditions in connection with the Sale, the Debtor shall be deemed to have assumed and assigned the Assumed Contracts as of the date of and effective only upon the Closing Date (as defined in the APA (or any other Successful Bid in accordance with the Bidding Procedures)), and absent such closing, each of the Assumed Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtor under the Bankruptcy Code.  Additionally, inclusion of any document on the list of Contracts in the Assignment Notice shall not constitute or be deemed to be a determination or admission by the Debtor or the Stalking Horse Bidder (or the other Successful Bidder, as the case may be) that such document is, in fact, an executory contract within the meaning of the Bankruptcy Code, all rights with respect thereto being expressly reserved.

(h)      Except as may otherwise be agreed to by the parties to an Assumed Contract, the defaults under the Assumed Contracts that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows: the Successful Bidder shall pay all Cure Costs relating to an assumed executory contract within ten days after the later of (i) the Closing Date; (ii) the date on which such Assumed Contract is deemed assumed and assigned; or (iii) the date on which the Successful Bidder and contract counterparty otherwise agree to in writing.

13

15931239

(i)      Following the Bid Deadline, no Proposed Assumed Contract may be excluded by the Stalking Horse Bidder or Successful Bidder, as applicable, and all Proposed Assumed Contracts shall be listed as Assumed Contracts in the Notice of Successful Bidder and Assumed Contracts.

(j)      Any Contract that is not an Assumed Contract shall be deemed rejected as of the Closing Date; *provided*, *however*, that if any Contract to which the Counterparty is Data Sales Co., Inc., or Farnam Street Financial, Inc. is not an Assumed Contract, then such Contract shall be deemed rejected as of the date that is sixty (60) days after the Closing Date.

17.     Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Bidding Procedures Order shall be effective and enforceable immediately upon entry.

18.     This Court shall retain jurisdiction over any matter or dispute arising from or related to implementing this Bidding Procedures Order.

Dated: _____, 2017

BY THE COURT:

_____
The Hon. Joseph G. Rosania, Jr.
United States Bankruptcy Judge

14

15931239

## EXHIBIT A

**Bidding Procedures**

15931239

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| In re: | |
| --- | --- |
| AJUBEO LLC, | Case No. 17-17924-JGR |
| EIN: 45-2467444, | Chapter 11 |
| Debtor. | |

**BIDDING PROCEDURES**

By the motion dated September 5, 2017 (the "**Motion**"),[1] Ajubeo LLC (the "**Debtor**"),

the debtor-in-possession in the above-captioned case under Chapter 11 of the United States

Bankruptcy Code (the "**Bankruptcy Case**"), sought approval of, among other things, the

procedures pursuant to which it will determine the highest or otherwise best offer for the sale

(the "**Sale**") of substantially all of the Debtor's assets (the "**Purchased Assets**") pursuant to the

terms of, and substantially in the form of, that certain Asset Purchase Agreement by and between

the Debtor and Green House Data, Inc. ("**Stalking Horse Bidder**"), dated as of September 5,

2017 (the "**APA**") attached to the Motion (as the same may be amended).

On [•], 2017, the United States Bankruptcy Court for the District of Colorado (the

"**Bankruptcy Court**") entered an order (the "**Bidding Procedures Order**"), which, among

other things, authorized, on a final basis, the Debtor to determine the highest or otherwise best

---

[1] The "Motion" referred to herein is the Motion for Entry of Orders (I)(A) Approving Bidding Procedures
for the Sale of Substantially All of the Debtor's Assets, (B) Approving Stalking Horse Bid Protections,
(C) Approving Procedures for the Assumption, Assignment, and Sale of Executory Contracts and Unexpired Leases,
(D) Approving the Form and Manner of Notice of the Auction and Sale Hearing and the Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases, (E) Scheduling an Auction and Sale Hearing,
and (F) Granting Related Relief; and (II)(A) Authorizing and Approving the Sale of Substantially All Assets and the
Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (B) Waiving the 14-Day
Stay of Fed. R. Bankr. P. 6004(h) and 6006(d).  Unless otherwise defined herein, all capitalized terms shall have the
meanings ascribed to them in the Motion.

15931239

price for the Purchased Assets through the process and procedures set forth below (the "**Bidding Procedures**").

On October 30, 2017 at [•] (prevailing Mountain Time) (or such other date and time as may be designated), as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") at which the Debtor shall seek entry of an order (the "**Sale Order**") authorizing and approving the Sale of the Purchased Assets pursuant to the terms of the Successful Bid (as defined below).

1.      **Participation Requirements**

(a)      To be qualified to receive any confidential information from the Debtor, a potential bidder must submit to the Debtor, prior to the receipt of any such information, an executed confidentiality agreement which shall inure to the benefit of the Successful Bidder, in a form and substance acceptable to the Debtor and the Stalking Horse Bidder.  To be qualified (i) to submit an Initial Overbid, as that term is hereinafter defined, and (ii) to participate in the Auction, a potential bidder must submit to the Debtor before the Bid Deadline (defined below) current audited financial statements and the latest unaudited financial statements of the potential bidder or, if such potential bidder is an entity formed for the purpose of acquiring the Purchased Assets, current audited financial statements and the latest unaudited financial statements of the equity holders or sponsors of such potential bidder who will guarantee the obligations of such potential bidder, or such other form of financial disclosure and/or credit-quality support or enhancement, if any, that will allow the Debtor to make a reasonable determination as to such potential bidder's financial and other capabilities to consummate the Sale.

2

15931239

(b)     Based on the materials received by it, the Debtor shall determine whether any potential bidder that has timely submitted the materials referred to in Section 1(a) above qualifies to submit a bid (such qualifying potential bidder, an "**Overbidder**").

2.    **Bid Requirements**

(a)     To participate at the Auction, an Overbidder must submit the following to the Debtor before the Bid Deadline (as defined below):

(i)     a proposed asset purchase agreement (the "**Competing Purchase Agreement**") executed by the Overbidder that (i) is on substantially the same terms and conditions as the APA along with a redlined, marked copy showing all changes between the Competing Purchase Agreement and the APA (the Debtor's counsel will provide a copy of the APA in Microsoft Word format to Overbidders); (ii) provides for a purchase price to be paid to the Debtor that exceeds the Purchase Price[2] (as defined in the APA) by at least fifty thousand dollars ($50,000) cash (such aggregate amount of the Purchase Price plus $50,000, the "**Minimum Overbid**"); (iii) contains a list of the Debtor's executory contracts and unexpired leases with respect to which the Overbidder seeks assignment from the Debtor (whether set forth in the Stalking Horse Bidder's APA or a Competing Purchase Agreement, the "**Proposed Assumed Contracts**"); (iv)  remains irrevocable until the earlier of the closing of a purchase of the Purchased Assets by the Successful Bidder and the Overbidder Outside Date (as defined below); (v) disclaims any right of the Overbidder to receive any transaction or breakup fee, expense reimbursement or similar fee or payment or to compensation under Bankruptcy Code Section 503(b) for making a substantial contribution; and (vi) contains a proposed closing date that is not later than November 15, 2017 or such later dates as may be agreed in writing by the Debtor and the Overbidder in their sole discretion (the "**Overbidder Outside Date**");

(ii)     a cashier's check made payable to the order of the Debtor in the amount of $100,000 (the "**Overbidder's Deposit**"), which will be retained by the Debtor as a nonrefundable good faith deposit for application against the purchase price at the closing of the transaction or returned to the

---

[2] Pursuant to the terms of the APA, the Purchase Price is $1,945,798.00, subject to adjustment based on the Closing AR Amount and the November Revenue Amount, as set forth in the APA.

15931239

Overbidder or otherwise applied as set forth in these Bidding Procedures; and

(iii)    admissible evidence in the form of affidavits or declarations establishing that the Overbidder has the financial ability to pay the purchase price and provide adequate assurance of future performance under all contracts to be assigned to it.

(b)    A bid received from an Overbidder (and any bid submitted at the Auction by an Overbidder) that meets the requirements set forth above will be considered a "**Qualified Bid**" if, in the good faith opinion of the Debtor, after consulting with its financial and legal advisors and with its secured lender, Silicon Valley Bank, (i) such bid is determined not to be materially more burdensome or conditional than the terms of the APA and (ii) the Debtor reasonably believes that such bid would be consummated before the Overbidder Outside Date if selected as a Successful Bid (as defined below).  Each Overbidder will be notified within 24 hours of receipt of its bid by the Debtor whether such Overbidder's bid has been deemed a Qualified Bid.

(c)    Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making any bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the asset purchase agreement with such Successful Bidder.

15931239

(d)      The Stalking Horse Bidder, and any entity that submits a timely Qualified Bid accompanied by all items required to be submitted along therewith in accordance with these Bidding Procedures (an "**Initial Overbid**"), shall each be deemed a "**Qualified Overbidder**" and may bid for the Purchased Assets at the Auction.  Any entity (other than the Stalking Horse Bidder) that fails to submit a timely, conforming Initial Overbid, as set forth above, shall be disqualified from bidding for the Purchased Assets at the Auction.  The Debtor shall, promptly upon receipt of any Initial Overbid, provide copies of such Initial Overbid to the Stalking Horse Bidder and to counsel for Silicon Valley Bank.

3.      **Bid Deadline**

(a)      The deadline for submitting bids by an Overbidder shall be **October 23, 2017** at **5:00 p.m.** (prevailing Mountain Time) (the "**Bid Deadline**").

(b)      Before the Bid Deadline, an Overbidder that desires to make a bid shall deliver written copies of its bid via overnight mail and email to (i) counsel for the Debtor, Brownstein Hyatt Farber Schreck LLP, 410 17th Street, Suite 2200, Denver CO 80202, Attn: Joshua M. Hantman; jhantman@bhfs.com; and (ii) counsel for Silicon Valley Bank, Riemer Braunstein, LLP, Three Center Plaza, Suite 600, Boston, MA 02108, Attn: Alexander Rheaume; arheaume@riemerlaw.com.

4.      **Auction**

(a)      If no timely, conforming Initial Overbid is received, the Debtor shall not conduct an Auction and shall request at the Sale Hearing that the Court approve the APA, including the Sale of the Purchased Assets (including the assignment of the Assumed Contracts, if any) to the

5

15931239

Stalking Horse Bidder, and request that the Sale Order shall be immediately effective upon entry, notwithstanding Bankruptcy Rule 6004(h).

(b)     If one or more timely conforming Initial Overbids are received, the Debtor shall conduct an Auction of the Purchased Assets, in which the Stalking Horse Bidder and all other Qualified Overbidders may participate.  The Auction shall be conducted at the offices of Brownstein Hyatt Farber Schreck LLP, 410 17th Street, Suite 2200, Denver, Colorado 80202 on **October 27, 2017** at **9:00 a.m.** (prevailing Mountain Time), or such other place and time as the Debtor may determine, so long as such change is communicated reasonably in advance to all Qualified Overbidders and other invitees, if any.

(c)     The following procedures will govern the Auction:

(i)     all Qualified Overbidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction or the Sale of the Purchased Assets;

(ii)     all Qualified Overbidders (other than the Stalking Horse Bidder) shall be deemed to consent to provide the Debtor with admissible evidence in the form of affidavits or declarations establishing (A) the Qualified Overbidder's good faith, within the meaning of Section 363(m) of the Bankruptcy Code; and (B) that the Qualified Overbidder is capable and qualified, financially, legally, and otherwise, of unconditionally performing all obligations under the Competing Purchase Agreement;

(iii)     bidding will start at the amount of the highest bid submitted by a Qualified Overbidder, as determined by the Debtor;

(iv)     each subsequent bid shall be in increments of no less than $50,000 in cash;

(v)     if the Stalking Horse Bidder makes a Court-approved postpetition loan ("**DIP Loan**") to the Debtor, then the Stalking Horse  shall have the right to credit-bid any and all obligations outstanding under the DIP Loan.  If the Stalking Horse Bidder is not the Successful Bidder, then all sale proceeds received by the Debtor shall be used first to repay the DIP Loan,

6

if any, in full prior to making any other payments or distributions on account of any other claims or obligations;

(vi)     immediately before concluding the Auction, the Debtor shall: (a) review each Qualified Bid for its financial and contractual terms and the factors relevant to the Sale process and the best interests of the Debtor's estate, its creditors and other parties-in-interest therein; and (b) after consulting with its secured lender, Silicon Valley Bank, determine and identify the highest or otherwise best Qualified Bid (the "**Successful Bid**") and the Qualified Overbidder (or the Stalking Horse Bidder) submitting such bid (the "**Successful Bidder**");

(vii)    if, at the Auction's conclusion and consistent with the Bidding Procedures' terms, the Stalking Horse Bidder's final bid is greater than the highest bid made by any Qualified Overbidder, such final bid shall be the Successful Bid, the Stalking Horse Bidder shall be the Successful Bidder and the Bankruptcy Court shall approve the APA, including the Sale of the Purchased Assets (including the assignment of the Assumed Contracts, if any) to the Stalking Horse Bidder, and authorize the Debtor to sell the Purchased Assets (including the assignment of the Assumed Contracts, if any) to the Stalking Horse Bidder, and the amount of the Stalking Horse Bidder's final bid shall constitute the Purchase Price under the APA; and

(viii)   for the avoidance of doubt, the Debtor may elect to deem the Stalking Horse Bidder's final bid to be the Successful Bid, notwithstanding the receipt of an apparently higher bid from another Qualified Overbidder, if the Debtor reasonably concludes that the Qualified Overbidder may not be able to close on a timely basis.

5.     **Sale Hearing**

A hearing to consider approval of the Sale to the Successful Bidder (or to approve the APA if no Auction is held or the Successful Bid is by the Stalking Horse Bidder) will take place on **October 30, 2017** at [•] (prevailing Mountain Time) in the courtroom of the Honorable Joseph G. Rosania in the United States Bankruptcy Court for the District of Colorado, 721 19th St., Denver, Colorado 80202 (the "**Sale Hearing**").

15931239

6.      **Return of Overbidder's Deposit**

Except with respect to the Successful Bidder, all Overbidder's Deposits shall be returned within three business days after the Auction concludes, or, if no Auction is held, within three days after the Sale Hearing.

15931239