**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| AJUBEO, LLC | ) | Case No.  17-17924 |
| Tax ID / EIN: 45-2467444 | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

_____

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF ORDER EMPLOYING BGA MANAGEMENT, LLC, AS CHIEF RESTRUCTURING OFFICER**
_____

The United States Trustee for Region 19 ("**UST**"), by and through undersigned counsel, objects to Ajubeo, LLC's ("**Debtor**") motion for authorization to employ and compensate BGA Management, LLC d/b/a Alliance Management ("**Alliance**"), as its Chief Restructuring Officer ("**CRO**") (Docket No. 24) ("**CRO Motion**").

**Summary of Objection**

1.  Asserting the authority of section 363(b), Debtor seeks to retain Alliance and its employees as Debtor's CFO.  The CRO Motion describes two separate provisions for compensation:  a) an hourly fee ranging between $375 and $495 per hour, and b) a "Success Fee" based on a percentage of the purchase price for the sale of Debtor's assets.

2.  The UST objects to the CRO Motion primarily on the basis that Alliance is a professional for whom employment would ordinarily be authorized only through, and under the conditions of, section 327(a) of Title 11 of the United States Bankruptcy Code.  In circumstances such as these, however, the UST generally will not to object to applications to retain crisis managers under section 363(b) provided that certain conditions are observed.  These conditions are memorialized in what is commonly referred to as the *Jay Alix Protocol* (a 2003 stipulation between the United States Trustee for Region 3 and a crisis manager.)

3.  These conditions are intended, *inter alia*, to protect the estate and guard against issues which might otherwise arise through the lack of complete disinterestedness but for the conditions imposed.  Among other key terms, the *Jay Alix Protocol* requires the crisis manager to limit itself to a single function in the bankruptcy case. The crisis manager may not fully supplant the debtor's existing management, but must remain answerable to the debtor's independent board of directors. In addition, the *Jay Alix Protocol* requires the crisis manager to file fee applications under procedures similar to those applicable to professionals under section 330 and limits the indemnification rights that the crisis manager's firm may receive. An individual crisis manager may be indemnified to the same extent as state law, the bylaws or other

1

documents of corporate governance permit the indemnification of individual officers or directors, along with insurance coverage under the debtor's D&O policy. The firm or corporate entity for which the crisis manager works may not be indemnified. Any "success fee" would be approved by the court at the conclusion of the case on a reasonableness standard and shall not be pre-approved under section 328(a). No success fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause or appointment of a trustee.

4. The UST does not contend that the *Jay Alix Protocol* has the force of law, but is instead a compromise to protect against substantive issues of concern notwithstanding a lack of disinterestedness. The UST has discussed these matters with counsel for the Debtor and as of the date of this objection, resolution has not yet been reached. It should be noted that the parties are actively pursuing resolution. The UST, therefore, objects to the CRO Motion premised on Alliance's status as a "professional" that must be retained through section 327(a), but that it lacks complete "disinterestedness," which is condition precedent to retention.

5. If the Court were to find that Alliance is in fact disinterested, then employment should be approved through section 327(a), including all the attendant conditions thereof, including the requirements for payment of compensation.

**Alliance is a "professional" for purposes of section 327(a).**

6. The classic definition of a "professional persons" for purposes of section 327(a) are "persons in those occupations which play a central role in the administration of the debtor proceeding." *In re Marion Carefree Ltd. Partnership*, 171 B.R 584 (Bankr. N.D. Ohio 1994); *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981). The degree of autonomy and discretion exercised by the firm or individual in question is also a relevant consideration in determining whether the requirements of section 327(a) apply. *In re Bicoastal Corp.*, 149 B.R. 216 (Bankr. M.D. Fla. 1993); *In re Park Ave. Partners Ltd. Partnership*, 95 B.R. 605 (Bankr. E.D. Wis. 1988).

7. "Generally, financial advisors, workout specialists and consultants are, for the purpose of Section 327 of the Bankruptcy Code, 'professionals.'" *In re Madison Management Group, Inc.,* 137 B.R. 275, 283 (Bankr.N.D.Ill.1992) ("president" appointed on eve of bankruptcy was a professional; employment allowed pursuant to section 1107(b), which provides that employment under section 327(a) is not prohibited "solely because of such person's employment by . . . the debtor before the commencement of the case,"); s*ee, also, In re Blue Stone Real Estate, Constr. & Dev. Corp.*, 392 B.R. 897, 907 (Bankr.M.D.Fla. 2008) (with respect to retention of a crises manager, the court found that retention under section 363 with the *Jay Alix Protocol* was insufficient in that case for the court to oversee the twin goals of section 327; the court permitted employment only pursuant to section 327).

8. Consistent with this traditional analysis, Judge Brooks, for example, found that outside corporate managers are subject to the Code's retention and compensation rules. *In re Neidig Corp.*, 117 B.R. 625, 626 (Bankr.D.Colo. 1990). In *Neidig*, Judge Brooks held that the manager of the debtor was "not entitled to compensation for services because (1) the company employed by the Trustee to manage the Debtor's business and its day-to-day operations was a

'professional person' who was required to have been employed by the estate pursuant to 11 U.S.C. § 327 and B.R. 2014 and compensated in accordance with 11 U.S.C. § 330 and B.R. 2016, and (2) the company is not otherwise entitled to compensation pursuant to 11 U.S.C. § 503." *Id*.

9. By all appearances, Alex Smith and Alliance are "professional" persons as contemplated by section 327(a). Pursuant to Debtor's CRO Motion, the very reason Alliance is being retained as CRO is to play a central role in the administration of the Debtor's bankruptcy proceedings. In paragraph 12 of the CRO Motion, Debtor states that the services of Alliance are necessary for the bankruptcy process, and which include services necessary to, "*inter alia*, (i) administer and execute the anticipated sale process, (ii) manage the Debtor's ordinary course operations pending completion of the sale, and (iii) assist in the preparation and execution of filings necessary to satisfy the Debtor's responsibilities under the Bankruptcy Code."

**Alex Smith/Alliance appear not disinterested.**

10. Disinterested persons may not be "an insider" and may not be "an officer, or employee of the debtor." 11 U.S.C. § 101(14)(A), (B).

11. Here, the CRO Motion seeks to employ a current officer. The UST understands that Mr. Alex Smith was appointed by Debtor's Board of Managers as Chief Restructuring Officer as of August 29, 2017. This would appear to render Mr. Smith and Alliance as not disinterested. *See, e.g., In re Copenhaver, Inc.*, 506 B.R. 757, 762 (Bankr.C.D.Ill. 2014) ("Here, the Debtor seeks to employ a current director who is, by definition, not disinterested. *See* 11 U.S.C.§ 101(14).").

12. As not disinterested, Alex Smith and Alliance may not be retained as professionals.

**Terms of compensation should not be deemed approved under section 328.**

*Any Success Fee Should Not Be Pre-approved Under 11 U.S.C. § 328(a).*

13. The CRO Motion has no reference to section 328(a) of the Bankruptcy Code. However, Debtor or Alliance may argue after the sale that the Success Fee (actually a transaction fee which is tied only to the business sale) was in fact preapproved under Section 328(a).

14. Sections 328 and 330 establish a two-tiered system for judicial review and approval of the terms of the professional's retention. Section 330 authorizes the bankruptcy court to award the retained professional "reasonable compensation" based on an after-the-fact consideration of "the nature, the extent, and the value of such services, taking into account all relevant factors." 11 U.S.C. § 330(a) (setting forth six factors).

15. However, section 328(a) - the standard of review that Debtor or Alliance may seek - requires a bankruptcy court to forgo a full post-hoc reasonableness inquiry if it pre-approves the "employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). If a court pre-approves

3

the terms and conditions of the retention under section 328(a), its power to amend those terms is therefore severely constrained. It may only "allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Id.*; *see, also, In re Commercial Financial Services, Inc.*, 427 F.3d 804 (10th Cir. 2005).

### *The CRO Motion fails to provide sufficient information for approval under section 328(a).*

16. The UST objects to any pre-approval of the success fee because Debtor has failed to show that approval of Alliance's retention with the proposed pre-approved compensation structure under section 328 is reasonable and necessary. Without a proper showing that the fee structure is reasonable, the CRO Motion must be denied.

17. In *In re High Voltage Engineering Corp.*, 311 B.R. 320, 332 (Bankr. D. Mass. 2004), for example, the court held that it was not in a position to gauge the reasonableness of the proposed terms and conditions of a financial advisor's employment under section 328(a). Accordingly the court declined to do so, where it had not been provided with information about, among other things, (i) the scope and complexity of the assignment or specialized skills needed for it; (ii) prevailing fees in the industry for comparable engagements, either in bankruptcy cases or other insolvency or workout situations; (iii) how the proposed financial advisor was selected; (iv) the number and qualifications of the professionals employed by the financial advisor who were assisting the debtors; or (v) the number of hours the financial advisor's employees had devoted and intended to devote to assisting the debtors in restructuring their financial affairs. *Id.* at 335 (citing *Drexel Burnham Lambert Group, Inc.,* 133 B.R. 13 (Bankr.S.D.N.Y. 1991).

18. The court further stated that the party seeking employment of professionals under section 328(a) "must establish that the terms and conditions of employment are reasonable, and evidence, not conclusory statements, is required to satisfy that burden." *Id.* at 333. *See also In re Gillett Holdings, Inc.*, 137 B.R. 452 (Bankr.D.Colo. 1991) ("While [a success fee] award may indeed become justified based upon the results of this Chapter 11 case, it is impossible for this Court to determine whether a success fee is earned until the services are performed and are found to qualify under the Bankruptcy Code").

19. Courts have recognized that determining what constitutes "reasonable" compensation for professionals may take into account a "market driven" approach. *See In re Commercial Financial Services, Inc.*, 298 B.R. 733, 750 (10th Cir. BAP 2003) *aff'd* 427 F.3d 804 (10th Cir. 2005). However, even if a particular provision in a professional engagement is common in the marketplace, it is not automatically "reasonable" under section 328. Although the court's approach may include a "market driven" analysis, it is not "market-determined," because the courts play a special supervisory role in bankruptcy cases. *Id.*

20. In this case, the CRO Motion fails to provide sufficient information to satisfy the burden that the terms and conditions of Alliance's proposed employment under section 328(a)

are reasonable as of today.

21. This is especially true where there is already a motion for sale on file that was apparently negotiated prior to the bankruptcy and prior to Alliance's retention. Further, the Success Fee is not the only fee that Alliance will receive. The hourly rates charged are in the range of $375 to $495 per hour.

22. The issues that remain unclear include, *inter alia*:

a. Why <u>both</u> an hourly fee and a transaction fee are reasonable in this case; *Compare In re XO Communications, Inc.*, 398 B.R. 106, 119 (Bankr.S.D.N.Y. 2008) ($2 million in monthly fees by the financial advisor were credited against a success fee).

b. What the prevailing fees for a <u>Chief Restructuring Officer</u> would be in the industry for a comparable engagement as a <u>Chief Restructuring Officer</u>. These fees should be distinguished from an Investment Banker, Business Broker, or Financial Advisor, which the UST understands is not an additional separate part of Alliance's engagement (and which could raise further disinterestedness concerns).

c. How Alliance was selected and how the fee structure determined.

d. The degree of difficulty that may be present in consummating a sale, especially given that a stalking horse bidder already exists for a sale price in excess of $1.9 million; and,

e. The level of assistance provided by Alliance that is not already being reasonably compensated by its hourly fee.

23. To "pre-approve" this fee structure as reasonable seems premature at best, as was found in *Gillett*. The Court should not deprive itself of future discretion by entering what is, in essence, a potentially final compensation order at the commencement of Alliance's engagement.

**<u>Miscellaneous.</u>**

24. The UST has additional miscellaneous objections which include:

a. <u>Authority to retain</u>. The UST has sought further information regarding the Debtor's exercise of authority to retain Alliance. The UST objects to the CRO Motion to the extent appropriate authority does not exist

b. <u>Indemnification</u>. As currently drafted, the indemnification appears overly broad in at least three respects:

i. Even for willful or grossly negligent conduct, the liability appears capped at the amount of fees paid to Alliance;

5

        ii.      Even if the parties have a contract dispute regarding billing, Alliance would be indemnified for debtor's "failure to pay any obligation when due."

        iii.     To the extent the indemnification is broader than historically provided to officers, the scope should be limited to such prior indemnifications. The indemnification also should not be broader than permitted to officers under Colorado law.

    c.    <u>Arbitration clause</u>. Section 3.6.1 requires disputes to be resolved by the AAA. This would abrogate the Court's authority and should not be permitted.

    d.    <u>Attorney fee clause</u>. Section 2.4 provides for recovery of Alliance's attorney fees if legal action is necessary to recover its fees. Per *Asarco*, paying fees-on-fees is neither a term of employment nor is it reasonable for the estate to pay for work that is not a client service.

    e.    <u>Billing</u>. For its hourly fee, Alliance should provide detail in monthly statements to include (i) summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred; (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. The time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task. All compensation should be subject to review by the Court under reasonableness standard of section 330 in the event an objection is filed.

WHEREFORE, for the foregoing reasons, the UST requests denial of the CRO Motion.

Dated: September 7, 2017            Respectfully submitted,

                          Patrick S. Layng
                          UNITED STATES TRUSTEE

                          <u>/s/ Alison E. Goldenberg</u>
                          By: Alison E. Goldenberg, #37138
                          Trial Attorney for the U.S. Trustee
                          1961 Stout Street, Suite 12-200
                          Denver, CO 80294
                          (303) 312.7238
                          (303) 312-7259 fax
                          Alison.Goldenberg@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on the date set forth below a copy of the foregoing was served by deposit in the United States Mail, postage prepaid, to the following parties:

Dated: September 7, 2017

Ajubeo, LLC

1470 Walnut Street, Suite 400

Boulder, CO 80302


Joshua M. Hantman, Esq.

410 17th St., Ste. 2200

Denver, CO 80202


Samuel M. Kidder
410 17th St., Ste. 2200
Denver, CO 80202


Michael Pankow

410 17th St., Ste. 2200
Denver, CO 80202


Matthew S. Rork

Fairfield and Woods, P.C.

1801 Lincoln Street, Suite 2600

Denver, Colorado 80202

Caroline C. Fuller

Fairfield and Woods, P.C.

1801 Lincoln Street, Suite 2600

Denver, Colorado 80202


Duncan E. Barber

Shapiro Bieging Barber Otteson LLP

4582 South Ulster Street Parkway, Suite 1650

Denver, Colorado 80237


Justin H. Miller

CAPLAN AND EARNEST LLC

1800 Broadway, Suite 200

Boulder, CO 80302-5289


/s/ Lauren Collins-Barron
Office of the United States Trustee